### CROWLEY v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 7176.

Circuit Court of Appeals, Sixth Circuit.
April 9, 1937.

---

716

Ralph W. Barbier, of. Detroit, Mich. (Raymond H. Berry, of Detroit, Mich., on the brief), for petitioner.

Morton K. Rothschild, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This case is one of several separate proceedings consolidated for hearing before the Board of Tax Appeals, involving identical facts and relating to income tax assessments against petitioner, Daniel T. Crowley, and the estate of Elizabeth Crowley. The Board sustained the Commissioner and redetermined deficiencies in individual income tax for the years 1927 and 1928 in the amounts of $2,278.-23 and $11,204.57, respectively.

The question presented is whether attorneys' fees paid by minority stockholders for services resulting in acquisition. of a greater interest in the corporation's assets and in gaining control of the corpo-

ration are deductible as ordinary business expenses or losses.

The facts were stipulated. Petitioner is sole beneficiary and co-trustee of a testamentary trust created by her deceased husband, Joseph Crowley, who in 1922 owned 22½% of the common stock of Crowley, Milner & Company, which operates a department store in Detroit, Michigan. Daniel T. Crowley and William C. Crowley, trustee, each held 10% of the whole, and all of these interests were voted as a block. At the time of his death in 1922 William L. Milner owned 42½% of the outstanding stock, and the remainder was held by William P. Emery, general manager of the store, and James B. Jones, another company executive. Emery purchased the Milner common stock in 1924, agreeing to pay $250 per share, with a down payment of $500,000, and the balance of $4,702,500 in seven annual installments. He pledged this stock and his own previous holdings as security for the deferred payments, but retained all voting privileges.

In 1925 Emery, who controlled the board of directors, caused a cash dividend to be declared much larger in amount than the corporation had usually paid. He also caused himself as general manager to be given complete control of the business and finances of the corporation. As a result, in 1925 the three Crowleys as minority stockholders brought suit in a Michigan state court, seeking to enjoin Emery from dissipating the corporate assets and from performing other alleged acts of mismanagement and praying that the sale of the Milner stock to Emery either be held void or that it be held for the benefit of all the stockholders. In an amended petition the Crowleys prayed that the contract for the sale of the Milner stock to Emery be held for the common benefit of all the stockholders, and that Emery and the trustees of the Milner estate be compelled to execute all necessary papers to carry the decree into effect. The Crowleys secured a temporary injunction in the state court, which was later vacated except as it still enjoined Emery from selling his stock. The Crowleys then entered into a series of contracts with Emery, by which it was agreed that the Crowleys should buy all of Emery's stock, that Emery should resign his position as general manager, and that the corporation should take over the Emery stock and finance its purchase mainly by the issuance of its own debentures. The capital structure of the corporation was to be altered so that the Crowleys should have a majority of the voting stock. The case in the state court was discontinued, and these agreements were carried out. After the reorganization was effected, the Crowley interests had complete control.

The trustees of the estate of Joseph Crowley, who died during the litigation, paid $25,000 and $55,800 in 1927 and 1928 respectively, as attorneys' fees, this being the estate's proportionate share of the costs of litigation in the state court and of the settlement. Petitioner claimed that these fees should be allowed as deductions in the fiduciary return of income and respondent disallowed them.

The statutes involved are sections 214 (a), 215 (a) (2), of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26, 28, and sections 23 (a) and (e) and 24 (a) (2) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 799.[1]

No deduction from income can be claimed as matter of right, and whatever deductions may be taken are purely a matter of statutory grant. Lloyd v. Commissioner, 55 F.(2d) 842, 844 (C.C.A.7). The burden is on the taxpayer to establish that his case comes within exemption

---

[1] Revenue Act of 1928.

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— * * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business." 26 U.S.C. A. § 23(a) and (e) note.

"§ 24. Items Not Deductible

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—* * *

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." 26 U.S.C.A. § 24(a)(2).

These provisions substantially re-enact the provisions of the Revenue Act of 1926.

provisions of the statute. Burnet, Commissioner, v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Reinecke, Collector, v. Spalding, 280 U.S. 227, 50 S. Ct. 96, 74 L.Ed. 385. It is clear that these fees were not paid as ordinary and necessary business expenses which, to be deductible, must have some reasonable relation to the business in question. White v. Commissioner, 61 F.(2d) 726 (C.C.A. 9). The acquisition of an increased interest in the corporation, and of joint control, was no part of the ordinary business of the trust. We pass the question as to whether attorneys' fees paid by stockholders to prevent dissipation of corporate assets through mismanagement and declaration of excess dividends are deductible as an expense since there has been no allocation of such fees as against those earned for revising capital structure and securing surrender of Emery's stock, and we can make none. Both the statute [section 214 (a) of the Revenue Act of 1926, and section 23, of the Revenue Act of 1928, supra], and Treasury Regulations 69, art. 101, and 74, art. 121, in effect limit deductible expenses to the current operating expenses incurred in producing income. Simmons Co. v. Commissioner, 33 F.(2d) 75 (C.C.A.1); Williams v. Burnet, Commissioner, 61 App. D.C. 181, 59 F.(2d) 357, 358. The decisions make a clear distinction between cases where amounts are paid out as a result of litigation or as a means of settling a dispute arising from an ordinary business transaction (Cf. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505), and where the payments are made in order to acquire property or gain control of a business. Newark Milk & Cream Co. v. Commissioner, 34 F.(2d) 854 (C.C.A.3). Expenditures made for the latter purpose are not deductible as ordinary and necessary business expenses. Home Trust Co. v. Commissioner, 65 F.(2d) 532 (C.C.A.8); Newark Milk & Cream Co. v. Commissioner, supra; Lindley v. Commissioner, 63 F. (2d) 807 (C.C.A.2). It was under the theory that these payments were made in order to acquire stock owned by adverse interests and to gain control of the corporation that the Board sustained the Commissioner.

■ Petitioner urges that the trust estate has acquired no property, and that it did not benefit by the litigation in the Michigan court. Hence she claims that the fees were paid solely for the preservation of the trust income and are not taxable. This contention is not tenable. The trust estate's proportionate share in the assets of a going and prosperous concern was materially increased by the recapitalization. In precise accordance with the various agreements, the Crowleys, who had contracted to buy the Emery stock, turned it over to the corporation, and recapitalization followed. A large block of the Emery stock was retired, as agreed, and as a result the 22½% of the common stock which had belonged to the estate of Joseph Crowley represented approximately 30%, and each of the other two Crowley interests was increased in the same ratio. The right of the trust estate to share in dividends and assets was enhanced. This was an acquisition of property.

■ The fact that the litigation alone did not secure these results is immaterial. The fees included the cost of services rendered in the Michigan case and in the settlement. The Crowleys claimed an interest in the Milner stock. The injunction no doubt aided in securing the settlement which deprived Emery of the Milner stock. Cf. Laemmle v. Eisner, 275 F. 504 (D.C.). Results so successful were rightly considered not to be a loss under section 214 (a) of the Revenue Act of 1926.

■ Petitioner vigorously urges that the Crowleys did not act in concert and that hence the trust estate did not acquire control. The Board regarded the Crowley family as a unit in these transactions. If there is substantial evidence to support this finding, this court will not disturb it. Helvering, Commissioner, v. Rankin, Ex'r, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Old Mission Portland Cement Co. v. Helvering, Commissioner, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367.

■ The record amply supports the conclusion that the Crowleys acted in concert in all matters pertaining to the management of the corporation. The petition before the Board alleged that "Messrs. Crowley engaged counsel," that the Crowley family acted in concert under the advice and guidance of counsel to maintain their position with respect to the management, and that "subsequent unhampered negotiation of the Crowley Family * * * changed the situation for the

betterment of the store." The phrases "Crowley interests," "the Crowleys," and "Crowley family" appear in the stipulation of facts. The will of petitioners' husband setting up the trust, after commenting upon the close identification in business affairs of the testator with his brothers, recommends that the executrix and trustees continue this association, and requests that whenever possible they·defer to the desires of the Crowley brothers in any business venture in which they "are jointly interested." This demonstrates the unanimity with which the Crowleys acted in the management of the corporation, and their consequent unified control after the Emery stock was acquired.

The decision of the Board of Tax Appeals is affirmed.