Samuel Cohen and Sarah Shechter Cohen, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 48725. Filed August 31, 1955.

*Kenneth P. Simon, Esq.*, and *Thomas J. McManus, Esq.*, for the petitioners.

*George J. Rabil, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined deficiencies in income tax of $1,737.22 for 1949 and $269.34 for 1950 and an addition of $262.05 for 1950 under section 294 (d) (2). The only issue for decision is whether legal fees of $5,000 for 1949 and $545 for 1950 were capital expenditures for the defense of title to property or were ordinary and necessary expenses under section 23 (a) (1) or (2). Substantially all of the facts were stipulated and are found as stipulated.

The petitioners, husband and wife, filed their joint returns for the taxable years with the collector of internal revenue for the twenty-third district of Pennsylvania.

They reported as income from a waste paper business, called Pittsburgh Paper Stock Co., $16,106.56 for 1949 and $25,542.56 for 1950. It is hereby found from the oral testimony that no other person reported any income from that business for those years, Sarah had no assets when she began that business in 1931, and her assets in the taxable years had been derived from the income of that business. Her assets during the taxable years included, in addition to the assets shown on her returns, land $4,200, accounts receivable $3,000 to $4,000, and cash in bank $6,000 to $9,000.

Ruth Shechter, the wife of Oscar Shechter, a brother of Sarah Shechter Cohen, filed a bill in equity on September 19, 1946, in the Court of Common Pleas of Allegheny County, Pennsylvania, against Oscar, Sarah, and John Doe. Sarah paid her attorneys $5,000 in 1949 and $545 in 1950 as fees and expenses in the suit. She claimed those amounts as deductions on her returns for those years. The Commissioner, in determining the deficiencies, disallowed the amounts as deductions on the ground that they were capital expenditures and not ordinary and necessary expenses.

Ruth alleged in her complaint that she and Oscar were married in 1926, had three children, were separated in 1932, Oscar had not provided suitable maintenance for her and their children, despite a court order, and the total arrearages under the order and a judgment amounted to $3,296, with interest. She also alleged, *inter alia*, that Oscar owned the prosperous business known as Pittsburgh Paper Stock Co., had conspired with his sister Sarah to claim falsely that the business belonged to Sarah and was planning to sell it to John Doe, to deprive Ruth of her lawful rights to suitable support for herself and the children. She prayed, *inter alia*, for a decree that the business and all of its assets are the property of Oscar and are seized to provide the funds for the suitable maintenance of Ruth and the moneys already due under the order and judgment, and for an injunction against the sale of those assets by Oscar and Sarah.

Oscar, as a part of his answer, denied that he ever owned or operated the business known as the Pittsburgh Paper Stock Co. and averred that Sarah "is and always was the sole owner" of that business.

Sarah answered denying that Oscar ever owned the business, alleging that she had always been its sole owner and alleging that none of her property ever belonged to Oscar. She objected to the jurisdiction of the court "to try the title of property of this defendant which the plaintiff admits is in the name of the defendant."

The court dismissed the bill of complaint at the costs of the plaintiff on March 23, 1949, for failure to establish a cause of action. The plaintiff excepted on March 24, 1949. The court entered a final decree on February 28, 1950, in accordance with an opinion that Ruth had

failed to introduce evidence tending to show that Oscar owned the business or had anything to do with it after 1943 when he left Pittsburgh.

Ruth appealed to the Supreme Court of Pennsylvania, briefs were filed and oral argument was heard. Ruth argued that she had introduced sufficient proof that Oscar was the sole owner of the business to require Oscar and Sarah to come forward with proof of a bona fide transfer and her offer of testimony of witnesses in prior support proceedings, now unavailable as witnesses, should have been admitted. Sarah and Oscar argued that the proof showed Sarah to be the sole owner of the business and the testimony from the prior proceeding was properly excluded. The court entered its opinion reversing the decree and remanding for further proceedings, in which the defendants would be required to produce proof to meet the inferences, that Oscar owned the business, deducible from the evidence introduced by Ruth. The supreme court refused to pass upon the exclusion of testimony taken in the nonsupport proceedings.

Ruth amended her complaint on May 1, 1951, to allege that Oscar and Sarah had withdrawn large amounts of earnings of the business, had invested the money in real and personal property, had taken much of the property in the name of Sarah and the described property was impressed with a trust in favor of Ruth for the amount due her from Oscar. She prayed for seizure and sale of the property to provide suitable maintenance for her. Both sides thereafter filed requests for findings of fact and conclusions of law. The proceeding is still pending.

Sarah and Oscar correctly state in the introduction to their requests that

The fundamental issue between the parties is whether Oscar Shechter in fact owns the business conducted under the name of Pittsburgh Paper Stock Company, but conceals it in the name of Sara [sic] Shechter in fraud of plaintiff's rights, or whether Sara [sic] Shechter is the bona fide sole owner thereof.

The only conclusion which may fairly be drawn from this entire record is that Sarah paid the attorneys' fees and expenses in an effort to defend her title to the business, its assets, and some property which she may have purchased with earnings of that business. The law is clear that legal fees and litigation expenses paid to defend one's title to property are capital expenditures to be added to the cost of the property and are not deductible as expenses under section 23 (a). *Morgan Jones Estate*, 43 B. T. A. 691, affd. 127 F. 2d 231; *Murphy Oil Co.*, 15 B. T. A. 1195, affd. 55 F. 2d 17, affirmed on another point 287 U. S. 299; *Moynier* v. *Welch*, 97 F. 2d 471; *Central Material & Supply Co.*, 44 B. T. A. 282, affirmed on this point sub nom. *Farmer* v. *Commissioner*, 126 F. 2d 542.

The petitioners argue that title to property was an incidental and not the primary issue in the suit since Ruth was merely trying to collect delinquent support payments from Oscar, who disclaimed title to the property. They cite *Rassenfoss* v. *Commissioner*, 158 F. 2d 764, and other cases. It is clear, however, that Sarah's purpose in paying the amounts in question was to defend the title to her property against Ruth's claim that it belonged to Oscar. The Commissioner did not err in disallowing the deductions in question.

*Decision will be entered for the respondent.*